**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                       Case No. 3:24-bk-32128-SHB

KAITLIN NICOLE WILLIAMS               Chapter 7

               Debtor

**MEMORANDUM ON TRUSTEE'S OBJECTION
<u>TO DEBTOR'S CLAIM OF EXEMPTION</u>**

**APPEARANCES:**    LAW OFFICES OF MAYER & NEWTON
        John P. Newton, Jr., Esq.
        1111 Northshore Drive
        Suite S-570
        Knoxville, Tennessee  37919
        Attorneys for Debtor

        MOSTOLLER, STULBERG, ALLEN, TIPPETT & BANKS
        Ann Mostoller, Esq.
        136 South Illinois Avenue
        Suite 104
        Oak Ridge, Tennessee  37830
        Attorneys for Ann Mostoller, Chapter 7 Trustee

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the Court on the Trustee's Objection to Debtor's Claim of Exemption Under T.C.A. § 26-2-111(1)(D) ("Objection") filed by Ann Mostoller, Chapter 7 Trustee ("Trustee") on October 8, 2025 [Doc. 38], through which the Trustee objects to Debtor's claimed exemption of a portion of her former spouse's retirement benefits in the amount of $11,000.00 ("Retirement Benefit").

The record before the Court consists of six stipulations of fact submitted by the parties on December 4, 2025 [Doc. 48], together with five stipulated exhibits: (A) the Final Decree of Divorce between Debtor and Tyler James Williams entered in the Chancery Court for Sevier County, Tennessee ("Chancery Court") on April 1, 2024 ("Divorce Decree"), with the incorporated Marital Dissolution Agreement ("MDA") [Doc. 48-1]; (B) the Qualified Domestic Relations Order entered by the Chancery Court on January 3, 2025 ("QDRO") [Doc. 48-2[1]]; (C) a letter to Debtor's state-court attorney, Jimmy G. Carter, Jr., from the Administrative Committee of UPS 401(k) Savings Plan dated January 15, 2025, recognizing the QDRO (the "QDRO Approval Letter") [Doc. 48-3]; (D) Debtor's Second Amended Schedule C filed on December 2, 2025, docketed at entry number 47 [Doc. 48-4]; and (E) the Objection, docketed at entry number 38 [Doc. 48-5].  Pursuant to Federal Rule of Evidence 201, the Court also takes judicial notice of material undisputed facts of record in Debtor's bankruptcy case and has considered the Trustee's brief filed on December 5, 2025 [Doc. 49], Debtor's brief filed on December 22, 2025 [Doc. 50], and the Trustee's reply filed on January 5, 2026 [Doc. 51].

Notwithstanding that the Trustee and Debtor did not identify issues as directed in the Order entered on October 30, 2025 [Doc. 40], the Court identifies the determinative issue as whether the Retirement Benefit is property of the estate.  If so, the issue becomes whether Debtor

---

[1] Also included as part of Exhibit B is an invoice from Debtor's state court attorneys, Breeding Carter, PC, dated January 10, 2025, related to preparation and submission of the QDRO.

is entitled to her claimed exemption.  If, however, the Retirement Benefit is not property of the estate, the inquiry ends. *See Owen v. Owen*, 500 U.S. 305, 308 (1991) ("No property can be exempted (and thereby immunized) . . . unless it first falls *within* the bankruptcy estate.")

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).  This memorandum constitutes the Court's findings of fact and conclusions of law.[2]  *See* Fed. R. Bankr. P. 7052, 9014(c).

## I. FACTS

Debtor and Tyler James Williams were divorced on April 1, 2024. [Docs. 48 at ¶ 1, 48-1.]  Pursuant to their MDA, through which they agreed to an equitable division of their property rights, Debtor and Mr. Williams agreed to the following relevant provision:

5. **RETIREMENT BENEFITS:**

a.  Wife shall be awarded Eleven Thousand Dollars ($11,000) from Husband's 401(k) with VOYA, Wife's attorney shall prepare a Qualified Domestic Relations Order to effectuate the division of the 401(k). Husband shall provide all information necessary for the drafting of the Qualified Domestic Relations Order, and the parties shall sign any and all documents required to effectuate the division of the account.
b. Any other benefits presently titled solely in the name of a party will remain that party's sole and separate property, and the other shall make no claim against such.

[Doc. 48-1 at 7.]  Neither party appealed the Divorce Decree. [Doc. 48 at ¶ 1.]

Debtor's counsel prepared and submitted a draft QDRO to the Plan Administrator for UPS on December 12, 2024, and to the Chancery Court on December 19, 2024. [Doc. 48-2 at 4.] The Chancellor entered the QDRO on January 3, 2025. [Docs. 48 at ¶ 3, 48-2.]  On January 15, 2025, the Administrative Committee for UPS 401(k) Savings Plan emailed Debtor's counsel the QDRO Approval Letter, advising that it had reviewed the QDRO and "determined that the Order

---

[2] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

constitutes a qualified domestic relations order . . . within the meaning of Section 206(d)(3) of

the Employee Retirement Income Security Act of 1974, as amended, and the UPS 401(k)

Savings Plan." [Docs. 48 at ¶ 4, 48-3.]  Relevant to this contested matter, the QDRO states the

following:

> 5.  The Alternate Payee [Debtor] shall be entitled to receive an amount which is equal to Eleven Thousand Dollars ($11,000) of the Participant's vested account balance under the Plan, determined as of April 1, 2024 (the "Valuation Date"), as if the Participant separated from service on that date. The amounts awarded to the Alternate Payee shall be credited or debited with investment gains and losses from the Valuation Date through the date said amounts are distributed to the Alternate Payee. Investment gains and losses shall be calculated in accordance with the terms of the Plan.
>
> . . . .
>
> 7.  The amounts awarded hereunder shall be paid to the Alternate Payee in a lump sum payment, as soon as practicable following the date this Order is determined by the Plan to be a qualified domestic relations order (within the meaning of Section 206(d) of ERISA).
>
> . . . .
>
> 9.  It is intended that this Order will qualify as a qualified domestic relations order under Section 206(d)(3) of ERISA, and shall be administered and interpreted in conformity with such Act.  This Order does not require the Plan to provide any type or form of benefit or any option not otherwise provided to the Participant under the Plan. This Order further does not require the Plan to provide increased benefits (determined on the basis of actuarial value) and does not require the payment of benefits to an Alternate Payee which are required to be paid to another Alternate Payee under another order previously determined by the Plan to be a QDRO.

[Doc. 48-2 at ¶¶ 5, 7, 9.]

Debtor filed the Voluntary Petition commencing this Chapter 7 bankruptcy case on

December 9, 2024. [Docs. 1, 48 at ¶ 2.]  On September 10, 2025, Debtor filed an Amended

Schedule C, reflecting, *inter alia*, an exemption in the Retirement Benefit as "401(k); UPS

401(k)" in the amount of $11,000 pursuant to Tennessee Code Annotated section 26-2-

111(1)(D). [Doc. 35.[3]]  The Trustee timely objected to the amended exemption on the basis that "the fund which is the subject of the claim of exemption was not property of the debtor at the time she filed bankruptcy." [Doc. 38.]  Debtor further amended Schedule C on December 2, 2025, to add Tennessee Code Annotated sections 26-2-103 and -105 and 11 U.S.C. § 522(b)(3)(C) as additional statutory bases for exempting the Retirement Benefit. [Doc. 48 at ¶ 5.] The parties stipulated that the Trustee's Objection applies to the Second Amended Schedule C. [Doc. 48 at ¶ 6.]

In her brief, the Trustee relies on the unpublished decision by Judge Richard Stair, Jr. in *In re Rimmer*, No. 01-30221 (Bankr. E.D. Tenn. June 15, 2001) [Doc. 49-1], in which he sustained the chapter 7 trustee's objection to the debtor's claimed exemption, found that the debtor was not a "participant in or beneficiary of" her former spouse's retirement account because a QDRO was not in place as of the petition date so that under Tennessee Code Annotated sections 26-2-105(b) and (c) (2000)[4], the debtor did not satisfy the statutory language. [*Id*. at 4, 6.]

Debtor argues that the Retirement Benefit is not property of the estate under 11 U.S.C. § 541(c)(2) and *Patterson v. Shumate*, 504 U.S. 753 (1992), and that the Trustee's reliance on *In re Rimmer* is misplaced.  She asks that *In re Rimmer* "be revisited and overturned to the extent it applies to the facts of this case" because "it was based on a technical reading by the Court of . . . [Tennessee Code Annotated section] 26-2-105, as opposed to the 'form over substance' of the property rights and exemptions at the time of the Petition." [Doc. 50 at 3.]  In the alternative,

---

[3] Debtor filed an Amended Schedule C originally on August 20, 2025 [Doc. 31], but later withdrew that document on September 10, 2025 [Doc. 34].

[4] For all practical purposes, the language of these statutes providing exemptions for retirement plans that fall within the scope of ERISA and QDROs remains unchanged in the current statute.

Debtor argues that exemptions are liberally construed in favor of debtors, and if the Court finds that the Retirement Benefit is property of the estate, she is entitled to exempt the Retirement Benefit under 11 U.S.C. § 522(b)(3) and Tennessee Code Annotated sections 26-2-103, -105(b), and -111.

As previously stated, the threshold issue is whether the Retirement Benefit is property of the estate. Because the Court finds that the Retirement Benefit is not property of Debtor's bankruptcy estate, the exemption issue is moot, and the Trustee's objection will be overruled.

## II. ANALYSIS

Debtor's bankruptcy estate, which included all of her property and property interests at the time, was created when she filed her bankruptcy case. 11 U.S.C. § 541(a). The scope of the definition of "property of the estate" under § 541(a) "includes all kinds of property, including tangible or intangible property," and is intended to be broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983). Section 541 includes in property of the estate even property that is subject to a restriction on the transfer of the debtor's interest. 11 U.S.C. § 541(c)(1). Debtor argues that the Retirement Benefit is not property of the estate[5] under subsection (c)(2), which expressly provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2); *see Patterson*, 504 U.S. at 758 ("The natural reading of the

---

[5] That Debtor listed the Retirement Benefit in her statements and schedules does not control whether it is property of the estate because debtors are required to schedule all interests that they hold in all property or face the consequences imposed by 11 U.S.C. § 727(a)(4) for failing to disclose them. *See Home Serv. Oil Co. v. Cecil* (*In re Cecil*), 542 B.R. 447, 454 (B.A.P. 8th Cir. 2015) (stating that "questions of whether bank accounts and other assets titled in a debtor's name are, or are not, property of the estate are not questions a debtor should decide[; r]ather those questions are plainly and fundamentally issues to be determined by a trustee or the court").

provision entitles a debtor to exclude from property of the estate any interest in a plan or trust

that contains a transfer restriction enforceable under any relevant nonbankruptcy law.").[6]

The QDRO Approval Letter recognized the parties' QDRO and makes clear that Mr.

Williams's 401(k) plan from which Debtor was awarded the Retirement Benefit is an ERISA-

qualified plan. [Doc. 48-3.]  Accordingly, there is no dispute that the plan from which the

Retirement Benefit arose falls within the scope of § 541(c)(2) and *Patterson*.  The question, then,

is whether Debtor's interest in the Retirement Benefit at the time she filed her petition was

property of the bankruptcy estate.  For this question, the Court finds persuasive the decision of

the United States Bankruptcy Court for the Northern District of Ohio in *Corzin v. Lawson* (*In re

Lawson*), 570 B.R. 563 (Bankr. N.D. Ohio 2017), in which the bankruptcy court determined

what legal or equitable interests the debtor had as of the petition date and what interests became

property of the estate in connection with the debtor's "share of her [former] husband's retirement

account after filing a divorce action but before effectuating a division of that account via a

transfer of assets authorized by the entry of a QDRO." *Id*. at 570.

In *In re Lawson*, the debtor filed her bankruptcy case on March 20, 2015. *Id*. at 569.  Two

months earlier, on January 6, 2015, the state court held a hearing in the pending divorce between

the debtor and her then-husband. *Id*. at 568.  At that hearing, the court read into the record the

terms of the settlement agreement between the debtor and her spouse, which included an equal

division of the husband's 403(b) retirement account. *Id*.  On January 8, the state court entered an

order styled as a "Judgment Entry" stating that "the proposed shared parenting plan and

---

[6] Interpreting whether § 541(c)(2) included ERISA-qualified plans, the Supreme Court relied on the plain language of the statute itself:  "Nothing in § 541 suggests that the phrase 'applicable nonbankruptcy law' refers, as petitioner contends, exclusively to state law. The text contains no limitation on 'applicable nonbankruptcy law' relating to the source of the law." *Patterson*, 504 U.S. at 758.  Because ERISA-qualified plans include the requisite anti-alienation language contemplated by Congress, a debtor's interest in such plans is excluded from property of the bankruptcy estate under § 541(c)(2). *Id*. at 761-62, 765.

separation agreement are approved, adopted, and incorporated into the final decree. The final

decree and shared parenting plan shall be filed within 21 days." *Id*. at 569 (citation omitted).  As

of the March 20 petition date, neither party had filed the documents as directed by the state court.

*Id*.  In the debtor's chapter 7 case, the trustee filed an adversary proceeding, arguing the

following with respect to the ex-husband's 403(b) retirement account:

> [The state court] had entered an order styled as a "judgment entry" approving a property settlement between the Debtor and her husband, but not a formal qualified domestic relations order ("QDRO") as defined in the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA") . . . [, and the trustee could] stand in the shoes of the Debtor and ultimately receive the Debtor's share of the funds from the Plan upon completion of the divorce without running afoul of either the ERISA-required anti-alienation provision of the Plan itself or the exemptions applicable to qualified tax-advantaged retirement accounts under Ohio and federal bankruptcy law.

*Id*. at 566.

The court examined "the distinct forms of interest" that each party argued the debtor held

in the 403(b) retirement account as of the petition date. *Id.* at 570.  The court initially looked to

whether the debtor held "a beneficial interest in the Plan assets, either by virtue of her

designation by [the ex-husband] as a beneficiary, her status as [his] spouse, and/or the entry by

the State Court of its January 8, 2015 Judgment Entry, which approved the division of the Plan

assets." *Id.*  "The proper legal characterization of these distinct rights," the court stated, "informs

the further inquiries about what is or is not excluded from property of the bankruptcy estate and

what property of the bankruptcy estate is exempt." *Id*.

First, the court found that the state court's "Judgment Entry" was a "domestic relations

order"  because it was signed by the state court judge, it granted the parties' a divorce after

approving and adopting the proposed settlement and property division agreement that had been

read into the record, and the order did not include any stay of its effectiveness pending entry of a

final decree. *Id*. The bankruptcy court next found that the state court's Judgment Entry fully vested the debtor with rights of a beneficiary in her ex-husband's 403(b) retirement account no later than January 8, 2015, because "[a] domestic relations order is a sufficient independent basis for a spouse to obtain a vested beneficial interest in an ERISA-qualified plan." *Id*. at 572. Stating that "ERISA does not distinguish between final decrees and other domestic relations orders [but] distinguishes only between domestic relations orders and qualified domestic relations orders," the court recognized that vesting occurs even while the plan administrator is reviewing the domestic relations order to determine if it constitutes a QDRO. *Id*. at 571, 572 (citations omitted). The court summarized the differences as follows:

> A domestic relations order, therefore, vests the spouse with rights protected by ERISA. The QDRO, by contrast, is necessary to take the next step of transferring the assets into the spouse's name in her own qualified plan or individual retirement account. As explained by the Ninth Circuit Court of Appeals, "[t]he QDRO provisions of ERISA do not suggest that [an alternate payee] has *no* interest in the plans until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained." *In re Gendreau,* 122 F.3d 815, 819 (9th Cir. 1997).

*Id*. at 572. Accordingly, because the debtor "became an ERISA-qualified beneficiary" when the state court entered the Judgment Entry, her beneficial interest in her ex-husband's 403(b) retirement plan was excluded as property of the estate by § 541(c)(2) and *Patterson*. *Id*. at 575.[7] *Accord In re Jeffers*, 572 B.R. 681, 689 (Bankr. N.D. Ohio 2017) ("[T]he lack of a QDRO in no way prevents the vesting of the parties' property rights.").

---

[7] Notably, the *Lawson* court also found that the ex-husband's "designation of the Debtor as beneficiary and the self-executing spousal beneficiary designation provisions of the Plan *as required by ERISA*" was another ground for deeming the debtor's interest as excluded from property of the estate under § 541(c)(2). *Id.* at 575 (emphasis added). Here, the record does not contain information that Debtor was designated as a beneficiary of her ex-husband's 401(k) plan, but ERISA requires such a designation absent an express waiver. *See* 29 U.S.C. § 1055(c)(2)(A); *In re Lawson*, 572-73 (finding that the debtor was "already a beneficiary of the plan before obtaining a QDRO because she was a named beneficiary and because ERISA requires spouses to be beneficiaries in qualified retirement plans unless those rights are expressly waived." (citation modified)).

Also persuasive is the reasoning in *In re Myatt*, No. 23-50239, 2023 WL 5761917 (Bankr. M.D.N.C. Sept. 6, 2023).  Addressing analogous questions in a nearly identical procedural posture, the bankruptcy court for the Middle District of North Carolina examined whether a debtor's interest in her former spouse's 401(k) account was exempt.  There, the consent order for divorce was final prepetition with an agreed division of marital property that awarded the debtor a distributive award from the ex-spouse's retirement account to be paid through a QDRO. *See id.* at *1. The chapter 7 trustee objected to the debtor's claimed exemption, arguing that the debtor did not own any interest in the distributive award from her former spouse's 401(k) account arising from the consent order or, in the alternative, that even if the consent order granted the debtor an ownership interest in the distributive award, it was ineffective without a QDRO.  *Id*. at *2.

The bankruptcy court disagreed, holding that under North Carolina law:

A final order resolving an equitable distribution proceeding . . . fixes the parties' rights and transforms the more general right to equitable distribution into concrete interests in specific property.  After being signed and entered by the trial court, an equitable distribution order such as the Consent Order is treated as an award under N.C. Gen. Stat. § 50-20.1 and each spouse's interests "vest" on the date of the order's entry.

The entry of an equitable distribution order, therefore, represents a key moment in a divorce-related division of property interests. If the Debtor and her ex-spouse were separated and still in the midst of a pending proceeding, the Trustee may be correct that the Debtor would merely possess a claim or right to equitable distribution rather than an interest in specific property. However, in this case the Debtor has already concluded the proceeding through entry of the Consent Order. The Debtor's interest is no longer an amorphous, unknown claim to as-yet-undivided marital property; rather, the Debtor's interests are now explicated and firmly fixed in the Consent Order. The terms of the Consent Order, signed and entered by the state court [prepetition], "constitute a full and final resolution of the Debtor's claims for Equitable Distribution, Post-Separation Support/Alimony and Attorney Fees, and [the ex-spouse's] claims for Equitable Distribution."

*Id*. at *3-4 (citation modified).

Concerning the trustee's argument that the lack of a prepetition QDRO affected the debtor's ownership as of the petition date, the bankruptcy court concluded that it did not, explaining that under both federal and state law, a QDRO is only a procedural device, not the mechanism by which property interests are vested:

> Although the Trustee is correct that the Consent Order would not qualify as a QDRO, that fact does not preclude a finding that the Consent Order vested the Debtor's ownership interest in . . . the 401(k) account. Rather, the division of the parties' property interests were completed upon entry of the Consent Order; the envisioned QDRO is merely a procedural device for implementing the terms of that Consent Order. James R. Turner, 2 EQUITABLE DISTRIBUTION OF PROPERTY § 6:20 (4th ed. 2023).
>
> State courts have adopted a two-pronged approach to dividing retirement benefits as part of an equitable distribution of marital property—"[t]he first order is the underlying substantive order stating the rights of the parties to the retirement benefits at issue," while the second "is a DRO – a separate order aimed at the plan administrator, directing it to send a separate benefit check to the nonowning spouse." *Id*. This divided approach reflects a deliberate choice made by state courts. Attempting to draft the initial substantive order to also meet the requirements of a QDRO "is rarely advisable, as such an order will contain many terms involving other assets and issues" and may simply "confuse the plan administrator, who could respond by refusing to qualify the order." *Id*. Instead, "the best procedure is almost always to draft the DRO as a separate document, focusing only upon dividing retirement benefits in a form which the plan administrator will recognize." In line with this rationale, a "majority of states" adhere to the "general rule in modern practice" that a DRO "is not a substantive order at all" but is instead "a procedural device for enforcing the terms of the underlying substantive order." *Id*. (citing *White v. White*, 568 S.E.2d 283, 285 (N.C. Ct. App. 2002), *aff'd*, 579 S.E.2d 248 (N.C. 2003)). As the Ninth Circuit Court of Appeals remarked, "the QDRO provisions of ERISA do not suggest that [the alternate payee] has no interest in the plan [ ] until she obtains a QDRO, they merely prevent her from enforcing that interest until the QDRO is obtained." *Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 421 (9th Cir. 2000) (quoting *In re Gendreau*, 122 F.3d 815, 819 (9th Cir. 1997)).

*Id*. at *5 (alterations in original).

Having found that the debtor was a fully vested owner in the 401(k) award, the *Myatt* court then found that the funds were not property of the estate under § 541(c)(2) and *Patterson*:

In interpreting the language of 11 U.S.C. § 541(c)(2), the Supreme Court confirmed that a debtor may exclude from property of the estate any interest – as a plan participant – in a plan or trust that includes a restriction on transfer enforceable under nonbankruptcy law, including an ERISA-qualified plan. *Patterson*, 504 U.S. at 758. Similarly, despite some disagreement, "most courts addressing the issue have determined that a debtor's interest as an alternate payee in the undistributed funds of an ERISA-qualified plan is not property of the bankruptcy estate." *In re Dyckman*, No. 1:10-bk-08586-MDF, 2012 WL 1302613, at *4 (Bankr. M.D. Pa. Apr. 16, 2012) (citing *Nelson v. Ramette* (*In re Nelson*), 322 F.3d 541, 545 (8th Cir. 2003)). Under this line of reasoning, "therefore, a person who acquires an interest in an ERISA plan via a QDRO can exclude that interest from a bankruptcy estate in the same way that the plan participant himself could have excluded it." *Nelson*, 322 F.3d at 545; *see also Ostrander v. Lalchandani* (*In re Lalchandani*), 279 B.R. 880 (B.A.P. 1st Cir. 2002); *In re Farmer*, 295 B.R. 322, 324-25 (Bankr. W.D. Wis. 2003); *In re Hthiy*, 283 B.R. 447, 451 (Bankr. E.D. Mich. 2002)[8]; *In re Seddon*, 255 B.R. at 819. Because the QDRO is merely a procedural device, courts have also found that a debtor's interest is excluded even in the absence of a QDRO, where an equitable distribution order or divorce decree establishes the debtor's interest. *See, e.g., Cooper v. Childon* (*In re Chilson*), No. 1:15-cv-00020-MR, Bankr. Case No. 12-10848, 2016 WL 1079149, at *5-6 (W.D.N.C. Mar. 18, 2016); *Walsh v. Dively* (*In re Dively*), 551 B.R. 570, 575-76 (W.D. Pa. 2016); *Wilson v. Wilson* (*In re Wilson*), 158 B.R. 709, 711 (Bankr. S.D. Ohio 1993).

*Id.* at *7 (citation modified).

Application of Tennessee law results in the same determination. In Tennessee, "[a] Final Decree of Divorce that incorporates the spouses' marital dissolution agreement is '*the controlling document that sets forth the division of property*.'" *Pruitt v. Pruitt*, 293 S.W.3d 537, 542 (Tenn. Ct. App. 2008) (citation omitted). Under Tennessee Code Annotated, "'[m]arital

---

[8] In *In re Hthiy*, Judge Steven Rhodes found that the debtor's undistributed interest in her ex-spouse's retirement plan was not property of the estate under § 541(c)(2) and looked to the purposes of ERISA's QDRO provisions:

In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary. 29 U.S.C. § 1056(d)(3)(K), (J). These provisions are essential to one of REA's [Retirement Equity Act of 1984, Pub. L. 98-397, 98 Stat. 1426] central purposes, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse. Apart from these detailed provisions, ERISA does not confer beneficiary status on nonparticipants by reason of their marital or dependent status. . . . The QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income.

*In re Hthiy*, 283 B.R. at 449-50 (citation modified) (quoting *Boggs v. Boggs*, 520 U.S. 833, 846-47 (1997)).

property' includes the value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefit rights accrued as a result of employment during the marriage." Tenn. Code Ann. § 36-4-121(b)(2)(B)(ii).  After a court awards one party to a divorce a portion of the other spouse's retirement or pension benefits in a divorce decree, entry of a QDRO is necessary to "allow[] an alternate payee to receive all or a portion of the benefits payable to a participant under a private pension plan." *Mpoyi v. Mpoyi*, No. M2018-01816-COA-R3-CV, 2020 WL 957650, at *2 (Tenn. Ct. App. Feb. 27, 2020).

"Typically, in Tennessee, a proposed QDRO is prepared by the parties' attorneys and submitted to the trial court for approval and entry, after which, it is submitted to the administrator who administers the pension plan in question." *Jordan v. Jordan*, 147 S.W.3d 255, 260 (Tenn. Ct. App. 2004) (footnote omitted).  "The purpose of the QDRO is to allow [one former spouse] to reach the [other former spouse's] interest in the 401(k) plan as allowed by [ERISA]." *Lagrone v. Lagrone*, No. 01A01–9603–CH–00125, 1996 WL 512032, at *3 (Tenn. Ct. App. Sept. 11, 1996).  "Notwithstanding their importance, issues and practice surrounding QDROs can give rise to contentious proceedings after a judgment of absolute divorce has been granted, because 'ERISA does not necessarily require that a QDRO be part of the actual judgment in a case.'" *Stiel v. Stiel*, 348 S.W.3d 879, 892 (Tenn. Ct. App. 2011) (citation omitted).  Nor is there a "statute of limitation for the entry of a QDRO . . .[; however, b]efore an alternate payee becomes entitled to rights under an ERISA plan, the proposed QDRO must be qualified." *Jordan*, 147 S.W.3d at 260.  Accordingly, a "judgment of divorce [awarding such benefits] 'create[s]' [the former spouse's] right to receive benefits under [the other spouse's]

plan . . . [and a] proposed QDRO simply 'recognizes' that right." *Jordan*, 147 S.W.3d at 261

(citing 29 U.S.C. § 1056(d)(3)(B)(i)(I)).[9]

Tennessee courts also have held that any subsequent documents, including QDROs, may

not alter or amend the final divorce decree.

> As this court has stated in several opinions, parties may not amend the terms of the property division in a final judgment by a subsequent agreement, such as a QDRO. *Cook v. Cook,* No. E2007–00750–COA–R3–CV, 2008 WL 555692, at *7 (Tenn. Ct. App. Feb. 29, 2008); *see Maxwell v. Maxwell,* No. 01A01–9402–CV–00086, 1994 WL 527134, at *2 (Tenn. Ct. App. Sept. 28, 1994) (vacating a QDRO that was ordered by the court after the divorce decree had become final because the QDRO was inconsistent with the parties' divorce decree); *see also Lagrone*, 1996 WL 512032, at *3 (vacating a QDRO that did not conform to the provisions of the Final Decree of divorce which had become final before the QDRO was entered).

*Pruitt*, 293 S.W.3d at 544; *see also Watson v. Clark*, No. M2003-02398-COA-R3-CV, 2005 WL

856083, at *4 (Tenn. Ct. App. Apr. 13, 2005) ("The intent of [a] QDRO is to recognize the

existence of the marital rights awarded to [the former spouse] by the Final Decree of Divorce and

. . . should not be construed in any manner inconsistent with any 'applicable judicial decision.'"

(citation modified)); *Gose v. Gose*, No. 03A01-9506-CH-0268, 1997 WL 129367, at *2 (Tenn.

Ct. App. Mar. 24, 1997) ("Because of the different circumstances in which a QDRO may prove

necessary, it is not essential that such an order be part of the judgment in the action. For one

thing, the Federal law does not require that a QDRO be part of the actual judgment in the case. . .

. In this case, the divorce decree as to pension benefits, could not have been enforced without

the QDRO, and the QDRO was necessary as an aid to enforcing the previously entered

judgment." (citation omitted)); *cf., In re Estate of Todd*, No. W2018-01088-COA-R3-CV, 2019

WL 1036080, at *4 (Tenn. Ct. App. Mar. 5, 2019) (finding that even though the divorce decree

---

[9] The *Jordan* court cited *Duhamel v. Duhamel,* 753 N.Y.S.2d 673, 674 (N.Y. Sup. Ct. 2002), which "characterized 'an action to compel entry of QDRO' as one 'to compel the other [spouse] to perform a mere ministerial task necessary to distribute funds previously allocated by the parties' own binding agreement.'" *Id*. at 262.

had been rejected as a QDRO by the plan administrator, "the language in the Divorce Decree makes it clear that the trial court intended Claimant to be an alternate beneficiary of the plan," and she was entitled to the portion awarded under the decree).

The Trustee argues that the facts of *In re Rimmer* are identical to the facts of this case. The Court, however, observes two seminal distinctions. First, in *Rimmer*, the court found that the record failed to establish that the debtor was either a participant or a beneficiary to her former spouse's 401(k) plan. *In re Rimmer*, No. 01-30221, at 4. More determinative, however, is that the question of whether the retirement funds in question in *In re Rimmer* were property of the estate was not raised or addressed.[10]

Other cases relied on by the Trustee in her reply likewise are inapposite or unavailing. For example, the Trustee argues that the bankruptcy court in *In re West*, 507 B.R. 252 (Bankr. N.D. Ill. 2014), "ruled . . . that a QDRO was required and because one had been entered, the debtor's interest in the Retirement Plan at issue was property of the estate." [Doc. 51 at 1.] In *In re West*, however, the parties provided the court with "no evidence" that the retirement plan contained a restriction on transfer; in fact, "neither party . . . provided the court with the Retirement Plan itself" so that the court could not analyze and determine whether the plan "contain[ed] an enforceable transfer restriction under applicable nonbankruptcy law." *Id*. at 257.

The Court also disagrees with the Trustee's assertion that "cases cited by the Debtor in her brief in this case clearly require that a QDRO be entered." [Doc. 51 at 2.] To the contrary, in *Ostrander v. Lalchandani* (*In re Lalchandani*), 279 B.R. 880 (B.A.P. 1st Cir. 2002), cited by Debtor [Doc. 50 at 3], the BAP affirmed the bankruptcy court's determination that the payment

---

[10] To the extent that this opinion is in conflict, the Court respectfully declines to follow *In re Rimmer*. As stated, the issue of whether the retirement benefit in that case was property of the estate was not addressed. Further, as illustrated by the numerous cases cited herein, the law concerning the treatment of rights under a QDRO in bankruptcy has been clarified in the intervening twenty-five years since *Rimmer* was decided.

owed to the debtor as alternative payee under her former spouse's pension plan was not property

of the estate under § 541(c)(2) even though she filed her case five days before the parties'

separation agreement and QDRO were entered by the state court.  In doing so, the panel rejected

the chapter 7 trustee's argument that *Patterson* did not apply because the debtor's interest in the

pension plan emanated from the QDRO. *Id*. at 884.  The panel instead relied on *Nelson v.*

*Ramette* (*In re Nelson*), 274 B.R. 789 (B.A.P. 8th Cir. 2002),[11] and determined "that the

beneficiaries under an ERISA-qualified retirement plan who are entitled to the protection of the

anti-alienation provision include a plan participant's ex-spouse who is made an alternate payee

of the plan pursuant to a qualified domestic relations order" and that a debtor's undistributed

interest in a former spouse's ERISA-qualified retirement plan obtained pursuant to a QDRO is

not property of the bankruptcy estate. *Id*. at 885-86.[12]

Here, the Retirement Benefit indisputably is an ERISA-qualified plan. [*See* Doc. 48-3.]

The parties also have stipulated that Debtor was awarded the Retirement Benefit through the

parties' Divorce Decree incorporating the MDA, which was not appealed. [Docs. 48 at ¶ 1, 48-

1.]  When that judgment became final under Tennessee law on May 1, 2024,[13] Debtor had a fully

vested interest in the Retirement Benefit, notwithstanding that the QDRO – which was merely a

---

[11] The *In re Nelson* court relied heavily on the Supreme Court's decision in *Boggs*. *In re Nelson*, 274 B.R. at 794-96.

[12] The Trustee also cited to *In re Remia*, 503 B.R. 6 (Bankr. D. Mass. 2013), as exemplary of when a court allowed an exemption based solely on a separation agreement without a QDRO; however, in that case, the issue of whether retirement funds awarded under a divorce judgment were property of the estate was not raised.  Instead, the bankruptcy court disagreed with the chapter 7 trustee's contention that the debtor was not a beneficiary to the retirement plan absent a QDRO and overruled the objection. *Id*. at 12. In fact, the court expressly found that "Section 522(d)(12) of the Bankruptcy Code requires only that funds be in a fund or account exempt from taxation. There is no question that in the absence of a QDRO, the Retirement Funds have not moved from the Retirement Plan. The Bankruptcy Code does not appear to require, nor has the Trustee cited any authority to support the proposition, that the Retirement Funds be held in an account belonging to the Debtor." *Id*.

[13] Parties to a judgment have thirty days to appeal as a matter of right. Tenn. R. App. P. 4(a).

procedural device for implementing the Divorce Decree – was not issued until postpetition.[14]

Under federal and Tennessee law, Debtor held a beneficial interest in the Retirement Benefit,

which is a trust for which the transfer is restricted and enforceable under applicable

nonbankruptcy law (i.e., an ERISA-qualified plan).  Accordingly, Debtor's interest in the

Retirement Benefit is not property of the bankruptcy estate under § 541(c)(2) and *Patterson*.[15]

### III.  CONCLUSION

Because the Court finds that the Retirement Benefit is not property of Debtor's

bankruptcy estate, the Trustee's Objection will be overruled.  The Court will enter an Order

consistent with this Memorandum.

FILED:  March 26, 2026

<div style="margin-left: 40%;">

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE

</div>

---

[14] As summarized by the Tennessee Court of Appeals, "regardless of whether the parties agree to a division or the court has to decree one, an order must be entered memorializing the division [and e]ven assuming the valid entry of an appropriate order, that order cannot be *enforced* in the absence of action by the plan administrator. . . [; however,] the approval of [a] QDRO is adjunct to the entry of the judgment of divorce and not an attempt to 'enforce' the judgment . . . [but] is an essential act to bring to fruition the trial court's [divorce] decree [concerning the division of retirement plan assets]." *Jordan*, 147 S.W.3d at 262.

[15] As previously stated, because the Retirement Benefit is not property of the estate, the exemption question is moot.